UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RAFAEL SALAS,

             Plaintiff,

      v.

NICHOLS, et al.,

             Defendants.

Case No. 17-cv-00663-JST

**ORDER SCREENING COMPLAINT**

United States District Court
Northern District of California

## INTRODUCTION

Plaintiff, an inmate at Pelican Bay State Prison ("PBSP"), filed this pro se civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed in forma pauperis in a separate order. His complaint (Dkt. No. 1) is now before the Court for review under 28 U.S.C. § 1915A.

## DISCUSSION

**A.**     **Standard of Review**

A federal court must engage in a preliminary screening of any case in which a prisoner seeks redress from a governmental entity, or from an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). In its review, the Court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b) (1), (2). Pro se pleadings must be liberally construed. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Specific facts are not

necessary; the statement need only 'give the defendant fair notice of what the . . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citations omitted). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted). A complaint must proffer "enough facts to state a claim to relief that is plausible on its face." Id. at 570.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated; and (2) that the violation was committed by a person acting under the color of state law. West v. Atkins, 487 U.S. 42, 48 (1988).

## B. Complaint

In reviewing the complaint's factual allegations, the Court notes that although Plaintiff has only alleged six causes of actions, his complaint is 59 pages long with 227 pages of exhibits, and the complaint details numerous allegedly wrongful acts, some of which are unrelated to the causes of actions, committed by Defendants between November 2013 and April 2016. The Court simply does not have the resources to scour the complaint and exhibits and organize the allegations contained therein in order to perform its screening duty under § 1915A and identify all cognizable claims.[1] Accordingly, the Court will presume that Plaintiff only seeks to bring the six legal claims which he has identified, and the Court will only review the factual allegations which support his legal claims.[2]

---

[1] This is not Plaintiff's first foray into federal court. See Salas v. Gomez, Case No. 14-cv-1676-JST (filed Apr. 11, 2014); Salas v. Ducart, Case No. 14-cv-2938-YGR. Case number 14-cv-1676-JST settled on January 27, 2017, and the Court dismissed the action at the parties' request on February 6, 2017. Case No. 14-cv-1676-JST, ECF No. 109. Plaintiff filed this action three days later.

[2] For example, the Court does not address Plaintiff's allegations that Officer Osborne and Warden Ducart refused to provide Plaintiff a copy of the CDCR's Office of Internal Affairs's ("OIA") response to Plaintiff's letter notifying the OIA that Plaintiff was suffering retaliatory actions and that there was an ongoing conspiracy to violate Plaintiff's First Amendment rights, Dkt. No. 1 at 33 and 36; that he did not have meaningful access to law library resources while housed in administrative segregation, id. at 42; or that the failure to grant him priority legal access resulted in

United States District Court
Northern District of California

The Court now turns to the allegations in Plaintiff's complaint which, in sum, alleges that prison officials have been continuously harassing him in retaliation for his use of the prison grievance system.[3]

November 2013 – December 2013: Truvino Grievance and Related Cell Searches. On November 6, 2013, Plaintiff and other inmates filed a group appeal against Correctional Officer Truvino (who is not a named defendant) for attempting to incite racial tensions between Black and Hispanic inmates. Dkt. No. 1 at 12.

Defendants retaliated against Plaintiff for filing for this group appeal in the following manner.

On December 4, 2013, named defendants Officers Nichols and Carraway trashed Plaintiff's cell under the guise of a cell search. Dkt. No. 1 at 13. Twenty minutes after this cell search was completed, John Does 1–15 rushed into Plaintiff's cell section and trashed all the cells in the section under the guise of a mass cell search. Id.

On December 23, 2013, Plaintiff filed grievance PBSP-B-13-04123 alleging that the cell searches and trashing of cells was in retaliation for his group appeal against Officer Truvino. Dkt. No. 1 at 14. Plaintiff was interviewed by named defendant Officer Barneburg with respect to this

---

his objections to a magistrate judge's findings and recommendations being overlooked and denied, id.; or that the security/welfare checks caused sleep deprivation and health issues, id. at 43, because these allegations are unrelated to the identified legal claims.

If Plaintiff wishes to bring additional legal claims based upon the other factual allegations set forth in his complaint, he may file an amended complaint. However, any amended complaint must comply with Rule 8 of the Federal Rules of Civil Procedure which requires the pleader to set forth his averments in a simple, concise, and direct manner, Fed. R. Civ. P. 8(a); and must comply with Rule 20 of the Federal Rules of Civil Procedure which provides claims and defendants may be joined only if the claims arise out of the same transactions or series, and if "any question of law or fact common to all defendants will arise in the action," Fed. R. Civ. P. 20(a)(2).

[3] The Court notes that, throughout the complaint, Plaintiff repeatedly alleges that certain actions violate prison regulations. However, violations of prison regulations cannot be remedied under § 1983 unless they also violate a federal constitutional or statutory right. See Davis v. Scherer, 468 U.S. 183, 192 (1984). Section 1983 provides no redress for prison officials' mere violation of state prison regulations. See Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir. 2009) (section 1983 claims must be premised on violation of federal constitutional right); Lovell v. Poway Unified Sch. Dist., 90 F.3d 367, 370–71 (9th Cir. 1996) (federal and state law claims should not be conflated; to the extent the violation of a state law amounts to a deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, section 1983 offers no redress).

grievance. Id. at 15. Officer Barneburg promised that correctional officers would not retaliate against Plaintiff and other prisoners for filing grievances. Id. at 15. In return, Plaintiff withdrew his grievance with the understanding that Plaintiff could re-filed his grievance if there were retaliatory acts in the future. Id. at 15.

July 2014 – September 2014: Grievances Regarding Law Library Restroom Policy. In July 2015, Plaintiff secured a job assignment as a computer clerk in B-Yard Education, which is located near the Law Library. Dkt. No. 1 at 15. Officer Forkner, who is stationed at the Law Library, was upset with Plaintiff's new job assignment and therefore instituted a new and arbitrary policy that inmates using the law library could only use the restroom once or twice a day. Id. at 15–16. Plaintiff filed a habeas action challenging Officer Forkner's arbitrary policy. Id. at 15. On August 5, 2014, Officer Forkner also denied Plaintiff's request for legal forms. Id. at 16.

In early August 2014, Plaintiff filed a grievance and a Form 22 regarding Officer Forkner's restroom policy.

In grievance PBSP-B-14-02281, Plaintiff alleged that Officer Forkner had retaliated against him for Plaintiff's efforts to seek redress of grievances; that Officer Forkner had interfered with Plaintiff's access to the courts; that Officer Forkner had incited racial tensions; and that Officer Forkner had used improper language when dealing with prisoners. Id. at 16–17. This grievance was ultimately denied at all levels. Dkt. No. 1 at 35.

In his Form 22, Plaintiff informed Officer Barneburg that Officer Forkner was retaliating against him for filing a grievance challenging the restroom policy. Id. at 16. Named defendant Officer Speaker responded to the Form 22, and stated that the restroom policy was prompted by complaints from correctional staff in B-Yard Education that inmates were using the restroom without supervision. Id. at 17. Plaintiff contacted B-Yard Education staff who all denied making such complaints. Id. On August 21, 2014, as Plaintiff was carrying out his assigned responsibility of emptying out wastebaskets, Officer Speaker accused Plaintiff of violating the restroom policy and threatened to issue an RVR. Id. at 18. In response, Plaintiff stated that he would file a grievance against Officer Speaker. Officer Speaker escorted Plaintiff back to his cell and had him confined to quarters. Id. at 18.

In response to this incident, Plaintiff sent two Form 22s to named defendant Captain Melton, and filed a group grievance against Officer Speaker, PBSP-B-14-02545. The first Form 22 alleged that Officer Forkner was retaliating against him; and the second Form 22 alleged that Officer Speaker was retaliating against him for his complaints regarding Officer Forkner. Id. at 18.

The group grievance against Officer Speaker alleged that Officer Speaker had falsely claimed that B-Yard Education staff complained about inmates using the restroom; had falsely accused Plaintiff of violating the restroom policy; had compromised the integrity of a staff complaint investigation; and had retaliated against him for filing a grievance against Forkner. Dkt. No. 1 at 19. Named defendant Officer Higgerson interviewed Plaintiff regarding this grievance. Officer Higgerson advised Plaintiff to seek a medical chrono for bathroom use in order to circumvent the restroom policy. Officer Higgerson denied Plaintiff's grievance, relying on the false evidence that B-Yard Education staff had made complaints about inmates using the restroom. Id. at 20.

At that time, Plaintiff was housed in PBSP B-Yard, 7-Block, A-section. Due to a series of retaliatory events which are described below, Plaintiff was transferred to administrative segregation housing. On January 14, 2015, Officer Bramucci informed Plaintiff that because Plaintiff was housed in segregated housing, Plaintiff had been removed from the complaint and named defendant Chief Deputy Warden Bradbury had processed the staff complaint as a program issue instead. Dkt. No. 1 at 39. In response, Plaintiff alleged that Officer Bramucci had violated Plaintiff's First Amendment rights when he excluded Plaintiff from his own grievance. Id. Named defendants Officers Townsend, Osborne, and Ducart affirmed Officer Bramucci's decision to remove Plaintiff from the grievance. Id. Plaintiff appealed this decision, but Officers Townsend and Bramucci cancelled Plaintiff's appeal. Id. at 40. Plaintiff appealed the cancellation of his appeal as an abuse of discretion. Id. Officer Osborne affirmed the cancellation of the appeal.

September 2014 Cell Search. On September 12, 2014, Officers Barneburg, Lacy, Schaad, Williams, and Loheim, all named defendants, searched Plaintiff's cell. Officer Schaad initially

5

declared Plaintiff's cell contraband free. Dkt. No. 1 at 20–21. Then Plaintiff witnessed Officer Barneburg enter his cell with a razor blade and exit without the razor blade. Id. Shortly thereafter, Officer Schaad informed Plaintiff that a razor blade had been found in his cell. Id. The cell search also resulted in the disappearance of Plaintiff's LAPD Murder Investigation book files which were relevant to Plaintiff's criminal habeas appeal. Id. at 24. After the cell search, not all of Plaintiff's property was returned to him, with named defendant Officer Harlen disposing of some of the property disposed. Pursuant to the cell search and the discovery of the knife, Plaintiff was reassigned to an administrative segregation unit ("ASU"), which was a more punitive level of housing than his prior housing. Id. at 25.

Grievances and Form 22s Related to September 2014 Cell Search. Plaintiff filed numerous grievances and Form 22s with respect to this cell search.

Plaintiff filed Form 22s seeking to have the razor blade preserved; and requesting photographs of the evidence, the names of the officers involved in the search, and the cell search slip. Plaintiff never received a photograph of the evidence despite contacting Officer Barneburg, Officer Lacy, and named defendant Officer Lawry. Dkt. No. 1 at 25–26. Officer Barneburg informed Plaintiff that he would receive a copy of the photographic evidence if such photographic evidence were used against him. Id. at 25. Officer Lawry never responded. Id. at 26.

On October 13, 2014, Plaintiff filed grievance PBSP-S-14-02922, alleging that Defendants had retaliated against him for filing a staff complaint by disposing of Plaintiff's legal and personal property. Dkt. No. 1 at 28. This staff complaint was rejected on the grounds that Plaintiff must first exhaust the Form 22 process. Id. This instruction contradicted Officer Lawry's earlier instruction that the Form 22 process should not be used when filing a staff complaint. Id. Plaintiff followed the instructions but never received a response. Id.

Plaintiff filed a staff complaint alleging that Officers Barneburg, Barneburg, Lacy, Schaad, Williams, Loheim retaliated against him for submitting two staff complaints against Officers Forkner and Speaker, and that Officers Hernandez and Harlen's disposal of Plaintiff's allowable property was also a retaliatory act. Dkt. No. 1 at 31. Officer Higgerson was assigned to investigate this staff complaint, but failed to take the matter seriously and relied on speculation

and hypotheticals in resolving the complaint in favor of the correctional officials. Id. at 31–32. The staff complaint was ultimately denied at all levels of review. Id. at 36.

On November 9, 2014, Plaintiff sent a Form 22 to Officer Barneburg notifying him that Officers Schaad, Loheim, and Williams had mixed up his personal property and asking why Officer Barneburg, in his supervisory capacity, had not taken precautionary measures to prevent loss of Plaintiff's property. Dkt. No. 1 at 34. Officer Barneburg responded that despite his supervisory position, he did not oversee every action as it occurred.

RVR Related to September 2014 Cell Search. Plaintiff was issued an RVR for possession of the knife found in the September cell search. On September 21, 2014, Plaintiff was assigned an investigative employee, Officer Bellinger, who is not a named defendant. Plaintiff prepared a list of questions for Officer Bellinger to ask Officers Schaad, Barneburg, and Lacy; and to ask Justin Canon, Plaintiff's cellmate at the time of the search. Plaintiff complains that Officer Bellinger refused to interview inmate Cannon. On October 7, 2014, Plaintiff asked Officer Bellinger to ask additional questions of Officers Schaad, Barneburg, and Lacy, and of inmates Canon and Velasquez; and Plaintiff also posed additional evidentiary requests and other questions. Dkt. No. 1 at 28. Plaintiff complains that Officer Bellinger did not act on these requests. Id.

Plaintiff requested that the hearing on the RVR be postponed because Officer Bellinger had failed to conduct a full investigation into the matter. Dkt. No. 1 at 31. Plaintiff then sent defendant Officer Osborne a request for staff assistance ("SA") to present evidence relevant to the RVR, arguing that his placement in ASU rendered him unable to collect and present evidence. Id. Officer Osborne failed to respond, and Plaintiff re-submitted the request to Officer Melton, who denied the request. Id. at 31. This request for staff assistance was denied at all levels of review. Id. at 37.

On November 6, 2014, a disciplinary hearing was convened with named defendant Officer Buchanon serving as the Senior Hearing Officer. Dkt. No. 1 at 33. Plaintiff alleges that Officer Buchanon prevented Plaintiff from preparing a complete defense and from offering exculpatory evidence when he denied Plaintiff's requests that the hearing be postponed until a SA was appointed; that prisoners Hernandez, Canon, and Velasquez be called as witnesses; and that

Plaintiff be allowed to examine the photographic evidence of the blade. Id. Officer Buchanon found Plaintiff guilty of possessing contraband in violation of prison regulations, and imposed several penalties, including credit forfeiture, temporary loss of entertainment appliances privileges, and housing in a segregated unit. Id.

Plaintiff requested the dismissal of his RVR. Warden Ducart conducted the second level review of Plaintiff's request and denied Plaintiff's request. Dkt. No. 1 at 39. Plaintiff alleges that Officer Osborne presented this second-level denial and Officer Osborne failed to take into account Officer Buchanon's false promise to consider inmate Canon's testimony, and the fact that Plaintiff was unable to gather evidence for his defense.

Request for Transfer. On April 3, 2016, Plaintiff submitted a Form 22 to named defendant Officer Strutz-Alexander requesting that he be transferred to a correctional institute closer to his family's home. Id. at 45. On April 6, 2016, the Unit Classification Committee, which was comprised of Officer Strutz-Alexander, named defendant Officer Wilcox, and another correctional official, denied Plaintiff's request for transfer on the grounds that Plaintiff was appropriately housed at PBSP, and that there was no available bed space in another Level 4 180-degree design housing unit prison. However, Plaintiff was informed by Justin Albergate, a White inmate that Albergate had been offered the option to transfer to either Kern Valley State Prison and Salinas Valley State Prison, which are both 180 prisons, and informed that there was available bed space in these facilities. Id. at 46. Plaintiff unsuccessfully appealed the denial of his transfer, with the denial being affirmed by Officers Townsend, Olson, Ducart, and Osborne. Id. at 46–47.

## C.    Legal Claims

### 1.    First Cause of Action: Retaliation

The complaint alleges that defendants Nichols, Carraway, Lamar, Forkner, Speaker, Schaad, Williams, Loheim, Hernandez, Stout, Lawry, Harlen, Buchanon, Melton, Osborne, Bradbury, and Ducart retaliated against him for filing a staff complaint, in violation of his First Amendment right when they harassed him; interfered with his ability to use the restroom; confiscated and destroyed his personal property; terminated his prison employment that paid wages and had favorable point deduction; placed him in punitive segregated housing and isolated

8

confinement; falsified evidence that formed the basis of a later disciplinary charge; interfered in a staff complaint investigation by providing false evidence; subjected him to emotional and mental abuse; and gave him an unfavorable classification score. Dkt. No. 1 at 49. The complaint also alleges that Officers Barneburg, Higgerson, Stout, Lacy, Lawry, Buchanon, Melton, Osborne, Bradbury, Ducart, and Beard were aware of their subordinates' misconduct, but did not prevent their subordinates from engaging in the allegedly unconstitutional behavior. In doing so, Officer Barneburg, Higgerson, Lacy, Lawry, Harlen, Melton, Bradbury, Ducart, and Beard implemented a practice that repudiated Plaintiff's constitutional rights. <u>Id.</u>

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." <u>Rhodes v. Robinson</u>, 408 F.3d 559, 567–68 (9th Cir. 2005) (footnote omitted). Liberally construed, the following allegations state a cognizable First Amendment retaliation claim: Officers Nichols and Carraway searched Plaintiff's cell and trashed his property in retaliation for his grievance against Officer Truvino; Officer Forkner imposed an arbitrary bathroom policy in retaliation for Plaintiff's use of the prison grievance system; Officer Speaker falsely accused Plaintiff of violating prison regulations in retaliation for Plaintiff filing a complaint about Officer Forkner; Officers Schaad, Williams, and Loheim conducted a search of Plaintiff's cell in retaliation for his grievances against Officers Forkner and Speaker; and Officers Hernandez and Harlen deliberately disposed of Plaintiff's property in retaliation for his grievances against Officers Forkner and Speaker. However, the claims regarding Officers Nichols and Carraway arise out of a different series of transactions, namely Plaintiff's grievance against Officer Truvino, while the other claims arise out of Officer Forkner's bathroom policy, Plaintiff's related complaint against Officer Forkner, and the resulting acts of harassment and retaliation (Officer Speaker's false report; the falsified RVR; and the related grievances). Accordingly, Plaintiff may not join Officers Nichols and Carraway as defendants in this action. Fed. R. Civ. P. 20(b) (persons may be joined in one action as defendants if the right to relief arises out of the same transaction,

occurrence, or series of transactions or occurrences). The claims against Officers Nichols and Carraway are DISMISSED without prejudice to Plaintiff filing these claims in a separate action.

The Court also dismisses the First Amendment retaliation claims against Officers Lamar, Stout, Lawry, Buchanon, Melton, Osborne, Bradbury, Ducart, Barneburg, and Higgerson. These defendants' involvement in the alleged constitutional violation is via their participation in the administrative grievance process (Lawry, Buchanon, Melton, Osborne, Bradbury, Ducart, Barneburg, and Higgerson), or in their capacity as supervisors of other defendants who directly participated in the alleged constitutional violation (Lamar, Stout). Plaintiff argues that Officers Lawry, Buchanon, Melton, Osborne, Bradbury, Ducart, Barneburg, and Higgerson retaliated against him for exercising his First Amendment rights by denying his grievances; and by implementing a practice of denying Plaintiff's constitutional rights by denying these grievances. He further argues that Officers Lamar and Stout bear § 1983 liability because they are either responsible for "the supervision of subordinate officers" who committed constitutional violations or they are responsible for the "well being of prisoners." See, e.g., Dkt. No. 1 at 6–8.

These allegations fail to state cognizable § 1983 claims for the following reasons. The prison grievance procedure does not confer any substantive rights upon inmates. Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988) (inmates have "no legitimate claim of entitlement to a grievance procedure"); Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (alleged constitutional violation in the processing of inmate's appeals insufficient to state a claim). Generally, actions in reviewing and denying inmate appeals cannot serve as a basis for liability under § 1983. Ramirez, 334 F.3d at 860. In addition, Plaintiff's conclusory allegation that the denial of the grievances implemented a practice of denying Plaintiff's constitutional rights is also insufficient to state a § 1983 claim. The complaint refers to two separate incidents which triggered rounds of grievances and Form 22s filed by Plaintiff: the June 2014 restroom policy and the September 2014 cell search. It is unreasonable to infer that these two incidents, and the related grievances and Form 22s, constitute a practice of denying Plaintiff's constitutional rights. Finally, Plaintiff's grievances only placed these particular defendants on notice regarding alleged past constitutional violations, and not ongoing constitutional violations. The alleged violations — the June 2014 restroom

policy and the September 2014 cell search — are separate incidents involving different correctional officials, and were not continuing at the time each grievance was filed. Accordingly, to the extent that Plaintiff alleges that Officers Lawry, Buchanon, Melton, Osborne, Bradbury, Ducart, Barneburg, and Higgerson violated his constitutional rights by participating in the prison grievance procedure, these allegations fail to state a § 1983 claim and are DISMISSED with prejudice.

Plaintiff's claim that Officers Lamar and Stout are liable in their supervisory capacity fails to state § 1983 liability because there is no respondeat superior liability under § 1983. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). A supervisor may be liable for a subordinate's actions where the supervisory defendants failed to properly train or supervise personnel resulting in the alleged deprivation, Ybarra v. Reno Thunderbird Mobile Home Village, 723 F.2d 675, 680 (9th Cir. 1984); the alleged deprivation resulted from custom or policy for which each of the supervisory defendants was responsible, see id.; or each of the supervisory defendants knew of the alleged misconduct and failed to act to prevent future misconduct, Taylor, 880 F.2d at 1045. However, there is no allegation of failure to train or supervise, and, as discussed above, it would be unreasonable to assume from the allegations set forth in the complaint that there was a custom or policy of violating Plaintiff's constitutional rights. Because it appears possible that Plaintiff may be able to correct this deficiency, the Court will dismiss this First Amendment retaliation claim against Officers Lamar and Stout with leave to amend. If Plaintiff chooses to amend his complaint and re-plead this cause of action, he must proffer enough facts to state a plausible claim that Officers Lamar and Stout failed to supervise their subordinates, and that this was the proximate cause of the alleged retaliation in violation of the First Amendment.

### 2. Second Cause of Action: Ninth Amendment and Fourteenth Amendment Right to be from Governmental Interference to Parent-Child Relationship

Plaintiff alleges that Officers Strutz-Alexander, Wilcox, Townsend, Olson, Ducart, and Osborne violated his Ninth and Fourteenth Amendment right to be free from governmental interference with his parent-child relationship when they refused to transfer him to a prison closer

11

to his children's homes. Plaintiff further alleges that the refusal to transfer him was racially discriminatory because prison officials offered a white inmate the transfer options that Petitioner was denied. Because the Ninth Amendment does not "independently secur[e] any constitutional rights for purposes of making out a constitutional violation," San Diego Cnty. Gun Rights Comm. v. Reno, 98 F.3d 1121, 1125 (9th Cir. 1996) (internal citations omitted), the Court construes this claim as a Fourteenth Amendment claim.

Plaintiff's allegations against Officers Townsend, Olson, Ducart, and Osborne with respect to their denial of Plaintiff's transfer request are DISMISSED with prejudice because their involvement in the alleged constitutional violation is via their participation in the administrative grievance process. Actions in reviewing and denying inmate appeals cannot serve as a basis for liability under § 1983. Ramirez, 334 F.3d at 860.

The Ninth Circuit has recognized that a parent has a "fundamental liberty interest" in "the companionship and society of his or her child" and that "[t]he state's interference with that liberty interest without due process of law is remediable under [42 U.S.C. § ]1983." Kelson v. City of Springfield, 767 F.2d 651, 654–55 (9th Cir.1985) (citing Santosky v. Kramer, 455 U.S. 745, 753 (1982)). However, prisoners have no constitutional right to incarceration in a particular institution, see Olim v. Wakinekona, 461 U.S. 238, 244–48 (1983); Meachum v. Fano, 427 U.S. 215, 224 (1976), and a prisoner's liberty interests are sufficiently extinguished by his conviction that the state may generally confine or transfer him to any of its institutions, to prisons in another state or to federal prisons, without offending the Constitution. See Rizzo v. Dawson, 778 F.2d 527, 530 (9th Cir. 1985) (citing Meachum, 427 U.S. at 225) (intrastate prison transfer does not implicate Due Process Clause), and Olim, 461 U.S. at 244–48 (interstate prison transfer does not implicate Due Process Clause)). Accordingly, the Court finds that Plaintiff's allegation that Officers Strutz-Alexander and Wilcox violated the Due Process Clause when they refused to transfer him to a correctional institute closer to his family fails to state a cognizable § 1983 claim. This claim is therefore DISMISSED with prejudice.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a

direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985) (quoting Plyler v. Doe, 457 U.S. 202, 216 (1982)).  A plaintiff alleging denial of equal protection under 42 U.S.C. § 1983 based on race or other suspect classification must plead intentional unlawful discrimination or allege facts that are at least susceptible of an inference of discriminatory intent.  Monteiro v. Tempe Union High School Dist., 158 F.3d 1022, 1026 (9th Cir. 1998).  To state a claim for relief, the plaintiff must allege that the defendant state actor acted at least in part because of plaintiff's membership in a protected class. See Furnace v. Sullivan, 705 F.3d 1021, 1030 (9th Cir. 2013).  A claim of racial discrimination under the Equal Protection Clause requires demonstration of discriminatory intent.  Washington v. Davis, 426 U.S. 229, 239-40 (1976).  Plaintiff has not pled any facts indicating that the refusal to transfer him was motivated by discriminatory intent.  Because it appears possible that Plaintiff may be able to correct this deficiency, the Court will dismiss this equal protection claim against Officers Strutz-Alexander and Wilcox with leave to amend.  If Plaintiff chooses to amend his complaint and re-plead this cause of action, he must proffer enough facts to state a plausible claim that Officers Strutz-Alexander and Wilcox's denial of Plaintiff's transfer request was motivated by discriminatory intent.

### 3.    Third Cause of Action: Fourteenth Amendment Right to Call Witnesses

Plaintiff alleges that Officer Buchanon's failure to call inmate Canon as a witness at his RVR hearing violated his Fourteenth Amendment right to call witnesses.  He alleges that Canon would have provided exculpatory testimony and photographic evidence that would prove that Plaintiff had been falsely accused of the RVR.  The Court finds that Plaintiff's allegation states a cognizable due process claim against Officer Buchanon.  The Supreme Court has recognized that there are five procedural protections required by the federal constitutional guarantee of due process for inmates facing disciplinary proceedings:  (1) adequate written notice of the charges, (2) receipt of the written notice at least twenty-four hours before the hearing, (3) ability to present documentary evidence and call witnesses unless doing so will be "unduly hazardous to institutional safety or correctional goals," (4) the factfinder must make a written statement of the

evidence relied upon and the reasons behind the disciplinary action, and (5) assistance from a fellow inmate or staff member if the inmate is illiterate or the issues are complex.  See Wolff v. McDonnell, 418 U.S. 539, 566–70 (1974).

### 4.    Fourth Cause of Action: Fourteenth Amendment Right to Staff Assistance

Plaintiff alleges that the failure of Officers Melton, Osborne, Buchanon, and Ducart to provide him with the requested staff assistance violated the Fourteenth Amendment.  This allegation fails to state a cognizable due process claim.  In Wolff, the Supreme Court held that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."  Wolff, 418 U.S. at 556.  Due process requires the grant of assistance from a fellow inmate or staff member if the inmate is illiterate or the issues are complex.  Id. at 566–70.  Plaintiff acknowledges that he is literate, but claims that the issues are complex.  Dkt. No. 1-2 at 73 and Dkt. No. 1-3 at 1.  Contrary to Plaintiff's allegation, the issues in Plaintiff's RVR — whether Plaintiff possessed the weapon or whether the weapon was planted — are not complex.  Plaintiff's allegations that he was "disabled" due to his segregated housing; that his housing prevented him from thoroughly investigating all issues; and that the issues involve confidential communications regarding staff misconduct did not render the issues complex.  Accordingly, this claim is DISMISSED with prejudice.

### 5.    Fifth Cause of Action: Fourteenth Amendment Right to Access the Courts with Hindrance or Interference

Plaintiff alleges that Officers Lamar, Forkner, Speaker, Schaad, Williams, Loheim, Hernandez, Lacy, Barneburg, Higgerson, Stout, Lawry, Harlen, Osborne, Bradbury, Ducart, Townsend, Bramucci and Beard hindered his access to the courts by fabricating reports to cover up misconduct; harassing him; preventing him from exhausting his claims; and denying him a staff investigator, in violation of the Fourteenth Amendment.[4]  Plaintiff further alleges that

_____

[4] Plaintiff also brings this claim against Officers Nichols and Carraway.  However, as discussed above, Officers Nichols and Carraway have been dismissed from this action without prejudice to re-filing against them in a separate action.

14

Officers Barneburg, Higgerson, Stout, Lacy, Lawry, Buchanon, Melton, Osborne, Bradbury, Townsend, Bramucci, Ducart and Beard were aware of the unconstitutional actions but failed to take correct action; and that these defendants implemented a practice that repudiated Plaintiff's constitutional rights.

Prisoners have a constitutional right of access to the courts.[5] See Lewis v. Casey, 518 U.S. 343, 350 (1996), which extends to established prison grievance procedures, see Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995), abrogated on other grounds by Shaw v. Murphy, 532 U.S. 223 (2001). This right to access the courts includes the right to litigate without interference. Silva v. Di Vittorio, 658 F.3d 1090, 1102 (9th Cir. 2011), overruled on other grounds as stated by Richey v. Dahne, 807 F.3d 1202, 1209 n.6 (9th Cir. 2015). It is unclear how the alleged false reports and harassment by Officers Forkner, Speaker, Schaad, Williams, Loheim, Hernandez, Lacy, Barneburg, and Harlen prevented Plaintiff from filing grievances. For example, Plaintiff alleges that Officers Barneburg, Lacy, Schaad, Williams, and Loheim harassed him by searching his cell; that Officer Barneburg planted a knife in his cell; and that Officers Hernandez and Harlen harassed him by deliberately disposing of his property. These actions are arguably retaliatory acts to deter him from accessing the prison grievance system, but nothing in the complaint indicates that these actions interfered with the grievances he had pending at the time of the false report was issued or at the time the harassment took place. The allegations of false reports and harassment state a First Amendment claim for retaliation (Plaintiff's first cause of action), and not a claim for interference with the right to access the courts. Accordingly, the Court construes Plaintiff's claim that Officers Forkner, Speaker, Schaad, Williams, Loheim, Hernandez, Lacy, Barneburg, and Harlen violated Plaintiff's Fourteenth Amendment right to access the courts by harassing him and filing false reports as a First Amendment retaliation claim. The Court has already found above that Plaintiff has stated a cognizable First Amendment retaliation claim against Officers Forkner,

---

[5] The constitutional source of the right of access to the courts is not settled. See Christopher v. Harbury, 536 U.S. 403, 413–14 & 415 n.12 (2002); Lewis v. Casey, 518 U.S. 343, 366–67 (1996) (Thomas, J., concurring). Supreme Court decisions have grounded the right in the Article IV Privileges and Immunities Clause, the First Amendment Petition Clause, the Fifth Amendment Due Process Clause, and the Fourteenth Amendment Equal Protection and Due Process Clauses. Christopher, 536 U.S. at 415 n.12 (citing cases).

1    Speaker, Schaad, Williams, Loheim, Hernandez, and Harlen, and now finds that Plaintiff has also

2    stated a cognizable First Amendment retaliation claim against Officers Barneburg and Lacy.

3         However, Plaintiff's allegations that Officers Lamar, Higgerson, Stout, Lawry, Osborne,

4    Bradbury, Ducart, Townsend, Bramucci, Beard, Barneburg, Buchanon, and Melton violated his

5    Fourteenth Amendment right to access the courts without interference are all predicated either on

6    these particular defendants' involvement in reviewing and denying his grievances (Officers

7    Higgerson, Lawry, Osborne, Bradbury, Ducart, Townsend, Bramucci, Beard, Barneburg,

8    Buchanon, and Melton), or predicated on their being responsible for "the supervision of

9    subordinate officers" or the "well being of prisoners," (Officers Lamar and Stout), <u>see</u>, <u>e.g.</u>, Dkt.

10   No. 1 at 6–8.  As discussed *supra* in Section, such allegations fail to state cognizable § 1983

11   claims.  Actions in reviewing and denying inmate appeals cannot serve as a basis for liability

12   under § 1983.  <u>Ramirez</u>, 334 F.3d at 860.  Plaintiff's conclusory allegation that the denial of

13   Plaintiff's grievances related to two separate incidents constitute a practice of denying Plaintiff's

14   constitutional rights, where the incidents occurred at different times and involve different

15   defendants, is insufficient to state a § 1983 claim.  Plaintiff's claim that Officers Lamar and Stout

16   are liable in their supervisory capacity fails to state § 1983 liability because there is no respondeat

17   superior liability under § 1983.  <u>See</u> <u>Taylor</u>, 880 F.2d at 1045.  There is also no allegation of

18   failure to train or supervise, and no reasonable inference that these particular defendants had a

19   custom or policy of violating Plaintiff's constitutional rights.  Finally, Plaintiff's grievances only

20   placed Officers Higgerson, Lawry, Osborne, Bradbury, Ducart, Townsend, Bramucci, Beard,

21   Barneburg, Buchanon, and Melton on notice regarding alleged past constitutional violations, and

22   not on notice regarding ongoing constitutional violations.  Accordingly, to the extent that Plaintiff

23   alleges that Officers Higgerson, Lawry, Osborne, Bradbury, Ducart, Townsend, Bramucci, and

24   Beard violated his constitutional rights by participating in the prison grievance procedure, these

25   allegations fail to state a § 1983 claim and are DISMISSED with prejudice.  However, because it

26   appears possible that Plaintiff may be able to correct the deficiency in his Fourteenth Amendment

27   claim against Officers Lamar and Stout, the Court will DISMISS this Fourteenth Amendment

28   claim against Officers Lamar and Stout with leave to amend.  If Plaintiff chooses to amend his

complaint and re-plead this cause of action, he must proffer enough facts to state a plausible claim that Officers Lamar and Stout failed to supervise their subordinates, and that this was the proximate cause of the Fourteenth Amendment violation.

### 6. Sixth Cause of Action: First Amendment Right to Petition the Government for Redress of Grievances

Plaintiff alleges that Officers Townsend, Bramucci, Osborne, and Ducart violated the First Amendment when they cancelled him from his staff complaint against Officer Speaker; when they failed to process his property appeal that alerted staff that the appeal had been submitted but lost; and when they were aware of, but ignored, Plaintiff's request that prisoners not face reprisals for submitting grievances regarding staff misconduct. This allegation fails to state a § 1983 claim. "[T]he right of meaningful access to the courts extends to established prison grievance procedures," Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995), overruled on other grounds by Shaw v. Murphy, 532 U.S. 223, 230 n. 2 (2001), and inmates have a First Amendment right to use the prison grievance system, Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2005). However, there is no constitutional entitlement to a prison grievance system at all, Mann, 855 F.2d at 640, or to a specific prison grievance procedure, see Ramirez, 334 F.3d at 860. Accordingly, Plaintiff's First Amendment claims against Officers Townsend, Bramucci, Osborne, and Ducart arising out of his removal from his staff complaint against Officer Speaker; the denial of his property appeal; and the denial of his request that inmates not face reprisals are DISMISSED with prejudice.

### 7. Doe Defendants

Plaintiff has named Does 1–15 as defendants. Because the use of Doe defendants is not favored in the Ninth Circuit, see Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980), the Doe defendants will be dismissed without prejudice. Should Plaintiff succeed in identifying the unknown defendants, he may, upon a proper showing, move to amend to add them to his complaint. See id.

### CONCLUSION

1. The Court DISMISSES the following claims with prejudice: Plaintiff's claim that Officers Lawry, Buchanon, Melton, Osborne, Bradbury, Ducart, Barneburg, and Higgerson's

1    participation in the prison grievance procedure constituted First Amendment retaliation; Plaintiff's

2    claim that Officers Townsend, Olson, Ducart, and Osborne violated the Due Process Clause and

3    the Equal Protection clause of the Fourteenth Amendment right when they refused to transfer him

4    to a correctional institute closer to his family; Plaintiff's claim that Officers Melton, Osborne,

5    Buchanon, and Ducart violated the Fourteenth Amendment when they refused to provide him with

6    staff assistance for his RVR hearing; and Plaintiff's claim that Officers Townsend, Bramucci,

7    Osborne, and Ducart violated the First Amendment when they cancelled him from his staff

8    complaint against Officer Speaker; when they failed to process his property appeal that alerted

9    staff that the appeal had been submitted but lost; and when they were aware of, but ignored,

10    Plaintiff's request that prisoners not face reprisals for submitting grievances regarding staff

11    misconduct.

12       The Court DISMISSES Officers Nichols and Carraway from this action without prejudice

13    to Plaintiff filing a separate action to seek relief against them.  The Court DISMISSES the Doe

14    Defendants without prejudice to Plaintiff seeking leave to amend the complaint to add these

15    defendants when he identifies them.

16       The Court will dismiss the First Amendment retaliation claim and the Fourteenth

17    Amendment claim against Officers Lamar and Stout with leave to amend.  If Plaintiff chooses to

18    amend his complaint and re-plead these causes of action, he must proffer enough facts to state a

19    plausible claim that Officers Lamar and Stout failed to supervise their subordinates, and that this

20    was the proximate cause of the First Amendment and Fourteenth Amendment claim.  The Court

21    will also dismiss the Equal Protection claim against Officers Strutz-Alexander and Wilcox with

22    leave to amend.  If Plaintiff chooses to amend his complaint and re-plead this cause of action, he

23    must proffer enough facts to state a plausible claim that Officers Strutz-Alexander and Wilcox's

24    denial of Plaintiff's transfer request was motivated by discriminatory intent.

25       In accordance with the above dismissals, the Clerk is directed to DISMISS the following

26    defendants from this action:  Officers Lawry, Melton, Osborne, Bradbury, Ducart, Higgerson,

27    Townsend, Olson, Townsend, Bramucci, Nichols, Carraway, Lamar, Stout, and Does 1–15.

28    Officers Buchanon and Barneburg are not dismissed from this action because, as explained above,

Plaintiff has stated other cognizable claims against them.

2.      If Plaintiff chooses to file an amended complaint, he must file the amended complaint within twenty-eight (28) days of the date of this order.  The amended complaint must include the caption and civil case number used in this order, Case No. C 17-00663 JST (PR) and the words "AMENDED COMPLAINT" on the first page.  If using the court form complaint, Plaintiff must answer all the questions on the form in order for the action to proceed.  Because an amended complaint completely replaces the previous complaints, Plaintiff must include in his amended complaint all the claims he wishes to present, including the claims which the Court has already found cognizable, and all of the defendants he wishes to sue.  See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992).  Plaintiff may not incorporate material from the prior complaint by reference.

Plaintiff is reminded that his allegations should be short and plain, and describe the relief he seeks.  Fed. R. Civ. P. 8(a).  Unrelated claims against different defendants must be pursued in separate lawsuits.  Fed. R. Civ. P. 20(a)(2) (joinder of defendants not permitted unless both commonality and same transaction requirements are satisfied).  Plaintiff may not change the nature of this suit by alleging new, unrelated claims in the amended complaint.

Failure to file an amended complaint in accordance with this order in the time provided will result the initial complaint remaining the operative complaint, and this action proceeding in accordance with this order.  The Clerk shall include two copies of a blank complaint form with a copy of this order to Plaintiff.

3.      The Court finds that the complaint has stated the following cognizable claims:  a First Amendment retaliation claim against Officers Forkner, Speaker, Schaad, Williams, Loheim, Hernandez, Harlen, Lacy, and Barneburg; and a Fourteenth Amendment claim against Officer Buchanon for refusing to call inmate Canon as a witness at Plaintiff's RVR hearing.

4.      The Clerk shall issue summons and the United States Marshal shall serve, without prepayment of fees, a copy of the complaint with all attachments thereto, and a copy of this order upon defendants Officers Forkner, Speaker, Schaad, Williams, Loheim, Hernandez, Harlen, Lacy, Barneburg, and Buchanon at Pelican Bay State Prison.

United States District Court
Northern District of California

A courtesy copy of the complaint with attachments and this order shall also be mailed to the California Attorney General's Office.

5.      In order to expedite the resolution of this case, the Court orders as follows:

a.      No later than 91 days from the date this Order is filed, defendants must file and serve a motion for summary judgment or other dispositive motion, or a motion to stay as indicated above.  If defendants are of the opinion that this case cannot be resolved by summary judgment, defendants must so inform the Court prior to the date the motion is due.  A motion for summary judgment also must be accompanied by a <u>Rand</u> notice so that plaintiff will have fair, timely, and adequate notice of what is required of him in order to oppose the motion.  <u>Woods v. Carey</u>, 684 F.3d 934, 939 (9th Cir. 2012) (notice requirement set out in <u>Rand v. Rowland</u>, 154 F.3d 952 (9th Cir. 1998), must be served concurrently with motion for summary judgment).  A motion to dismiss for failure to exhaust available administrative remedies similarly must be accompanied by a <u>Wyatt</u> notice.  <u>Stratton v. Buck</u>, 697 F.3d 1004, 1008 (9th Cir. 2012).

b.      Plaintiff's opposition to the summary judgment or other dispositive motion must be filed with the Court and served upon defendants no later than 28 days from the date the motion is filed.  Plaintiff must bear in mind the notice and warning regarding summary judgment provided later in this order as he prepares his opposition to any motion for summary judgment.  Plaintiff also must bear in mind the notice and warning regarding motions to dismiss for non-exhaustion provided later in this order as he prepares his opposition to any motion to dismiss.

c.      Defendants shall file a reply brief no later than 14 days after the date the opposition is filed.  The motion shall be deemed submitted as of the date the reply brief is due.  No hearing will be held on the motion.

6.      Plaintiff is advised that a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case.  Rule 56 tells you what you must do in order to oppose a motion for summary judgment.  Generally, summary judgment must be granted when there is no genuine issue of material fact – that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case.  When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn

testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(c), that contradict the facts shown in the defendants' declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial. <u>Rand v. Rowland</u>, 154 F.3d 952, 962–63 (9th Cir. 1998) (en banc) (App. A).

Plaintiff also is advised that a motion to dismiss for failure to exhaust available administrative remedies under 42 U.S.C. § 1997e(a) will, if granted, end your case, albeit without prejudice. You must "develop a record" and present it in your opposition in order to dispute any "factual record" presented by defendants in their motion to dismiss. <u>Wyatt v. Terhune</u>, 315 F.3d 1108, 1120 n.14 (9th Cir. 2003).

(The <u>Rand</u> and <u>Wyatt</u> notices above do not excuse defendants' obligation to serve said notices again concurrently with motions to dismiss for failure to exhaust available administrative remedies and motions for summary judgment. <u>Woods</u>, 684 F.3d at 939).

7. All communications by plaintiff with the Court must be served on defendants' counsel by mailing a true copy of the document to defendants' counsel. The Court may disregard any document which a party files but fails to send a copy of to his opponent. Until a defendants' counsel has been designated, plaintiff may mail a true copy of the document directly to defendants, but once a defendant is represented by counsel, all documents must be mailed to counsel rather than directly to that defendant.

8. Discovery may be taken in accordance with the Federal Rules of Civil Procedure. No further court order under Federal Rule of Civil Procedure 30(a)(2) or Local Rule 16 is required before the parties may conduct discovery.

9. Plaintiff is responsible for prosecuting this case. Plaintiff must promptly keep the Court informed of any change of address and must comply with the Court's orders in a timely fashion. Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b). Plaintiff must file a notice of change of address in every pending case every time he is moved to a new facility.

10. Any motion for an extension of time must be filed no later than the deadline sought to be extended and must be accompanied by a showing of good cause.

11. Plaintiff is cautioned that he must include the case name and case number for this case on any document he submits to the Court for consideration in this case.

IT IS SO ORDERED.

Dated: June 30, 2017

_____
JON S. TIGAR
United States District Judge