UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RAFAEL SALAS,

        Plaintiff,

v.

FORKNER,

        Defendants.

Case No. 17-cv-00663-JST (TSH)

**DISCOVERY ORDER**

Re: Dkt. No. 78

Plaintiff Rafael Salas, an inmate at Kern Valley State Prison, filed this action pursuant to 42 U.S.C. § 1983 against prison officials at Pelican Bay State Prison, where he was previously housed. As relevant here, he asserts a First Amendment retaliation claim against Defendant Barneburg, alleging that he and a co-Defendant searched Salas's cell and planted a blade in retaliation for his grievances against other Defendants. ECF No. 51 at 20 (summary judgment order). On summary judgment, Judge Tigar found "a triable issue of material fact as to whether Defendant Barneburg ordered the search of Plaintiff's cell and planted a blade in Plaintiff's cell because of Plaintiff's litigation and grievance activity." *Id*. at 31-32. Specifically, Judge Tigar found that:

> It is undisputed that, in 2013 and 2014, Defendant Barneburg reviewed and responded to Plaintiff's grievances alleging retaliation by PBSP officers. Defendant Barneburg alleges that he had Plaintiff's cell searched on September 12, 2014 because he received information earlier that day indicating that there was a razor blade hidden in inmate Canon's cell and that Plaintiff and his cellmate were in possession of a razor blade as well. In support of this allegation, Defendant Barneburg provides a confidential memorandum dated September 12, 2014, detailing how the confidential information was received and the specifics of the confidential information received. The confidential memorandum also discusses the cell searches, indicating that it was drafted after the cell search. Plaintiff alleges that Defendant Barneburg lied when he authored the confidential

> memorandum. He denies possessing a knife and describes witnessing Defendant Barneburg enter his cell with a blade and exiting without the blade. He provides affidavits from inmate Hernandez who also witnessed Defendant Barneburg enter Plaintiff's cell with a blade and exiting without the blade, and from inmate Canon who witnessed Defendant Barneburg exit the officer's station with the blade, head towards the general direction of Plaintiff's cell, and then return without the blade. Viewing the evidence in the light most favorable to Plaintiff, there is a triable issue of material fact as to (1) whether Defendant Barneburg initiated the search of Plaintiff's cell because he received confidential information that Plaintiff and his cellmate possessed a blade, or because he intended to plant the blade in Plaintiff's cell in retaliation for Plaintiff's protected conduct, and as to (2) whether Defendant Barneburg falsely stated in the confidential memorandum that he received information that Plaintiff and his cellmate possessed a blade. Defendant Barneburg is therefore not entitled to summary judgment with respect to the cell search unless he is entitled to qualified immunity.

*Id*. at 32.

Plaintiff now moves to compel an unredacted version of Barneburg's September 12, 2014 confidential memorandum that was discussed in the summary judgment order (ECF No. 25-25, discussed at ECF No. 25-24 ¶7). Salas's counsel want to know the identity of the confidential informant so they can depose him. They observe that Judge Tigar found a triable question of material fact as to whether Barneburg learned from the confidential informant that Salas had a weapon in his cell or whether Barneburg lied about that, and they figure the only other person who has knowledge about that is the confidential informant. They propose that the Court order the unredacted report produced to them under a protective order and subject to an "attorneys' eyes only" designation, understanding that they cannot tell their client the informant's identity. Defendants oppose any disclosure of the informant's identity, even pursuant to a protective order. They argue it would put the informant at tremendous risk and would jeopardize prison officials' ability to cultivate relationships with confidential informants. Defendants have submitted the Declaration of Z. Basnett, ECF No. 87, which details those risks.

The parties agree that the federal official information and informant privileges govern the Court's inquiry. ECF No. 78. The official information privilege "is moderately pre-weighted in favor of disclosure," *Kelly v. City of San Jose*, 114 F.R.D. 653, 661 (N.D. Cal. 1987). "If the government makes the equivalent of a *prima facie* showing of harm, courts must conduct a situation specific analysis of the factors made relevant by the request in issue and the objection to

1    it." *Id*. at 663.  Similarly, "[t]he decision whether or not to disclose the identity of a confidential

2    informant calls for balancing the public interest in protecting the flow of information against the

3    individual's right to prepare his [case]."  *Percelle v. Pearson*, 2014 WL 4416075, at *1 (N.D. Cal.

4    Sept. 8, 2014) (citation and quotation marks omitted).  "For the informant's privilege to give way,

5    the party seeking disclosure has the burden of showing that its need for the information outweighs

6    the government's interest in nondisclosure."  *Id*. (citation and quotation marks omitted).

7          This is a tough discovery dispute because at first blush the conflicting interests seem so

8    stark.  Salas says he absolutely needs this information so he can prove his claim, and Defendants

9    say that providing this information puts the informant's life at risk.

10         Maybe it helps to break it down into two pieces.  First, there is the confidential

11   memorandum that contains the name of the informant.  Ordering the Defendants to produce this to

12   Salas's counsel creates some risk of disclosure of the informant's identity.  Not much risk, just

13   some.  The risk is that counsel might erroneously include the unredacted document in a filing or

14   otherwise inadvertently disclose it, or that the unredacted document might get admitted as a trial

15   exhibit.  These errors don't happen often, but they happen sometimes.  If that error were to

16   happen, and if someone (whether incarcerated or not) in the informant's former Security Threat

17   Group ("STG") learned his identity, the result could be deadly for the informant.  *See* Basnett

18   Decl., ECF No. 87, ¶¶ 5-31; *see also Ashker v. Cate*, 2013 WL 4026971, at *3 (N.D. Cal. July 12,

19   2013) (ordering redaction of names of confidential informants and debriefers and explaining that

20   "[b]y this order, the court in no way suggests that Plaintiffs' counsel would reveal the identity of

21   these individuals to their clients.  The court only recognizes that accidental disclosures can happen

22   and that the identity of these persons must be afforded the greatest protection.").  The thing is,

23   even if the Court were willing to take on this small risk of a terrible thing happening, just

24   producing the unredacted memorandum doesn't seem to do Salas any good.  The entire

25   justification for learning the informant's identity is to depose him.  So, producing the unredacted

26   memorandum is not worthwhile in and of itself.  It's only worth doing if the informant should be

27   deposed.

28         That, however, raises serious concerns.  Basnett's declaration sets forth a compelling

1  explanation that the informant would be in significant danger if any member of his former STG
2  learned that he was the informant, that the STG's members and sympathizers are distributed
3  widely throughout CDCR's prisons and are also outside the prisons, and that the informant is still
4  in CDCR's custody and will be for at least 15 more years.  A deposition of a prison inmate is
5  highly likely to be noticed by other inmates.  They will want to know what happened, will ask
6  questions, may be suspicious, and might start rumors.  If the informant is deposed within the
7  prison, it seems unlikely that could be kept confidential from the other inmates; and if he were
8  released for the deposition, that would be even more visible to others.  The deposition would put a
9  spotlight on the informant.  If he doesn't have a pending lawsuit of his own against the prison
10 guards, people will realize it's about someone else's case.  And they may begin to wonder whose
11 side he was on.[1]

The Defendants are also right that this deposition could chill the ability to work with confidential informants within the prison.  Certainly, this informant would likely be alarmed to learn that information he provided in confidence – information that could get him killed if others learned he provided it – was turned over in litigation and now he's being deposed about it.  There's no way he would provide information to prison guards again.  And if the worst happened and other inmates learned the informant was deposed about information he provided about the STG in a debriefing, this story would become a legendary cautionary tale in California's prisons, spreading fear and chilling other attempts to work with informants.

We also have to be realistic about the value of this deposition.  Testimony is at its most useful when the witness is unbiased.  Many witnesses have some bias, however, because they are the litigants or are in some manner affiliated with one side or the other.  But sometimes a witness has so much personally at stake that you really have to wonder what value his testimony has.  In

---

[1] During oral argument, Salas's counsel suggested they might interview the informant rather than depose him.  The Court views this suggestion with skepticism because Plaintiff's counsel's interview notes would be inadmissible at trial.  But even if we play along and imagine that the Defendants would stipulate that something short of a formal deposition transcript could be admissible at trial, any of the plausible alternatives (such as a recorded interview) would functionally resemble a deposition and would present all of the same problems discussed above in the main text.

4

this case, the informant would have a lot at stake. First, he would have to consider whether his testimony could cause him to be murdered by the STG or its sympathizers, which might lead him to deny that he provided Barneburg with any information. The Basnett declaration persuasively establishes that any testimony by the informant that he did indeed tell Barneburg that Salas had a weapon in his cell could get him killed by STG members or sympathizers. Presumably the informant understands this as well. During the deposition, his testimony would be recorded and possibly there would be a video of him testifying. The informant would know that the transcript would be in the hands of multiple people with conflicting interests (unlike the confidential memorandum Barneburg wrote) to be used in some manner in a lawsuit, so it would probably end up being submitted to the Court. And, of course, his testimony would end all deniability because these words would be coming out of his mouth. It would only be natural under these circumstances for the informant to be terrified. All the assurances in the world about how there is a protective order that governs the use of his testimony could hardly be reassuring. What if someone makes a mistake? What if someone doesn't comply with the protective order? Can he really be sure his videoed deposition won't get uploaded to YouTube tomorrow, and then (depending on what his testimony is) he's a dead man?

Interestingly, the informant also faces another pressure. Having abandoned his STG (if we accept that as true), he now depends for his life on the prison guards not revealing that he is an informant. He also, more generally, lives under the rule of prison guards, so has to fear possible retaliation by prison officials if he does something to anger them. What happens to him if he testifies in favor of Salas, calling Barneburg a liar? If the informant knows that's actually the truth, then he also knows that Barneburg is a retaliatory kind of guy who seeks revenge on inmates who get him in trouble – yikes! And if the informant testifies in Salas's favor knowing it is all a lie, the informant would be throwing Barneburg under the bus, wrongly calling him a liar – not a way to get prison guards to like you.

Perhaps the informant has unflinching moral courage and will simply tell the truth, without fear that he will be murdered by his former STG if he testifies one way or retaliated against by prison guards if he testifies the other way. That would be a lot of moral courage. But we should

also acknowledge the very realistic possibility that if the Court subjects the informant to this life-threatening deposition (or interview, *see* n.1), he will just say whatever he thinks will most likely keep him alive. And so, perhaps the interests that seemed so conflicting as an initial matter really don't conflict at all. The official information and informant privileges are often described as weighing the need for truth against other values. *Kelly*, 114 F.R.D. at 661-62. But maybe we aren't trading the truth for anything because truth would not have been the driving factor behind the informant's testimony anyway – rather, self-preservation would have been.

We should remember that this is not a criminal case where the disclosure of the identity of a confidential source is inevitable at trial simply as part of the government's burden to prove its case. *See, e.g., United States v. Reyes*, 2016 WL 520866 (N.D. Cal. Feb. 10, 2016) (dispute was about how far in advance of trial the confidential source's identity had to be revealed). Trial does not require the informant's testimony, for either side. Salas does not need the informant's testimony to prove his retaliation claim against Barneburg. He can use his, Hernandez's and Canon's testimony, as he did on summary judgment. And for his part, Barneburg can use his own testimony. Thus, we are not faced with the situation where the lack of the informant's testimony cuts off the ability of one side or the other to prove its case.[2]

Accordingly, balancing the need for disclosure against the potential harms it may cause, as both of these qualified privileges require, the Court finds that the balance tips against disclosure, and Salas's motion to compel is **DENIED**.

**IT IS SO ORDERED.**

Dated: May 15, 2020

THOMAS S. HIXSON
United States Magistrate Judge

---

[2] *Cordoba v. Pulido*, 2016 WL 11668862 (N.D. Cal., Sept. 21, 2016) is inapplicable. In that case, "Defendant [did] not proffer[] any reason specific to Plaintiff or this case why the disclosure of the witnesses' identity pose any risk or would otherwise undermine the public interest in effective law enforcement." *Id*. at *3. Here, the Basnett declaration provides that information.